[Civ. No. 23589. Third Dist. Dec. 28, 1984.]

JOHN A. PROVIENCE, Plaintiff and Appellant, v.
VALLEY CLERKS TRUST FUND et al., Defendants and Respondents.

**COUNSEL**

Jerry L. Rowley for Plaintiff and Appellant.

McLaughlin & Irvin, Ralph J. Scalzo, Davis, Cowell & Bowe and J. Thomas Bowen for Defendants and Respondents.

**OPINION**

**SIMS, J.**—In this case, we hold that tort claims for fraud, bad faith denial of benefits, and intentional infliction of emotional distress, asserted by an employee against an employee benefit plan subject to ERISA,[1] are preempted by ERISA and may not be litigated in the state courts of California.

---

[1]ERISA is the Employee Retirement Income Security Program of 1974, title 29 United States Code section 1001 et seq. (See esp. § 1003(a).) (All further statutory references are to title 29 of the United States Code unless otherwise indicated.) ERISA is a comprehensive regulatory scheme intended to protect the interests of employees in fringe benefit plans offered by employers. (*Shaw* v. *Delta Air Lines, Inc.* (1983) 463 U.S. 85, 90 [77 L.Ed.2d 490, 497, 103 S.Ct. 2890]; *Russell* v. *Mass. Mut. Life Ins. Co.* (9th Cir. 1983) 722 F.2d 482, 488, cert. granted, Oct. 1, 1984, — U.S. — [83 L.Ed.2d 29, 105 S.Ct. 81].) Although the Supreme Court has granted a hearing of *Russell*, the case remains good law unless and until the Supreme Court reverses it in whole or in part. (*State of California* v. *Superior Court (Perry)* 150 Cal.App.3d 848, 859, fn. 9 [197 Cal.Rptr. 914].)

### FACTUAL AND PROCEDURAL BACKGROUND

In June 1978 plaintiff obtained employment with Raley's Markets. Raley's offered plaintiff participation in one of two medical payment plans as a benefit of his employment. Plaintiff chose Valley Clerks Trust Fund (Fund), an employee benefit plan subject to regulation under ERISA.

At the first union meeting plaintiff attended, some discussion of the Fund's benefits occurred and a pamphlet describing those benefits was presented to him. No representatives of the Fund were present.

In September and October 1979 plaintiff sustained physical injuries in two motor vehicle accidents. Following the second accident plaintiff submitted a number of claims to the Fund for payment of medical expenses. Prior to payment of plaintiff's claims, the Fund requested that he execute an "Agreement to Reimburse" as required by a rule duly enacted by the Fund's trustees. The rule is similar to that described in *Molina* v. *Retail Clerks Unions etc. Benefit Fund* (1980) 111 Cal.App.3d 872 at page 876 [168 Cal.Rptr. 906] and essentially provides that the Fund is entitled to reimbursement from proceeds obtained from third parties who are liable for injuries sustained by a person covered by the Fund.

Before executing the agreement plaintiff requested that he be allowed the opportunity to discuss its contents with an attorney; the Fund agreed. Plaintiff's attorney informed plaintiff that the agreement required plaintiff to forfeit valuable legal rights to which he was entitled and advised him not to sign it. After a period of negotiations in August 1980 (approximately 10 months after plaintiff submitted his claims), the Fund agreed to modify the terms of the agreement. Unwilling to settle for receipt of benefits, plaintiff instituted this lawsuit in September 1980.

On October 8, 1980, plaintiff filed his first amended complaint.

The first cause of action contained two legally separate claims. It alleged that defendants misrepresented the benefits available to Fund members and fraudulently induced plaintiff to elect to participate in the Fund instead of the other medical plan offered by his employer. The first cause of action also alleged defendants acted in bad faith in refusing to pay plaintiff's claim until he executed the "Agreement to Reimburse."[2]

---

[2]These allegations are factually related in that plaintiff alleges defendants fraudulently induced plaintiff to choose the Fund upon representations as to its benefits without disclosing the nature of the "Agreement to Reimburse" plaintiff would be required to execute before any benefits would be paid. The "bad-faith" claim is based upon the acts of the Fund of insisting upon execution of the agreement before any benefits would be paid.

The second cause of action alleged defendants intentionally inflicted emotional distress upon plaintiff by their response to his claim for benefits.

The third cause of action alleged defendants violated certain federal regulations in failing to establish a reasonable claims procedure.

The fourth cause of action alleged defendants violated provisions of California law (Civ. Code, § 1770 and Bus. & Prof. Code, §§ 17200 and 17500).

On November 10, 1980, defendants removed the action to the United States District Court for the Eastern District of California. Defendants then moved to dismiss (Fed. Rules of Civ. Proc., rules 12(b)(6), 12(f)) each of the four causes of action arguing that each of plaintiff's causes of actions were preempted by ERISA. The district court, in a published order, held that plaintiff's first two causes of action were not preempted by ERISA because they were brought under state law of general application which furthers an important state interest and does not conflict with ERISA. (*Provience* v. *Valley Clerks Trust Fund* (E.D.Cal. 1981) 509 F.Supp. 388, 391-392.) The court further held that plaintiff's third cause of action was expressly permitted by ERISA. Concluding plaintiff's fourth cause of action was clearly preempted by ERISA, the court dismissed it. (*Id.*, at p. 392.) The court expressly exercised its discretion to retain jurisdiction over plaintiff's pendant state causes of action (1 and 2).

Thereafter, both parties moved for summary judgment on the remaining three causes of action. (Fed. Rules Civ. Proc., rule 56.) The district court found that defendants' handling of plaintiff's claim did not violate federal regulations as alleged and granted defendants' motion for summary judgment as to plaintiff's third cause of action.[3]

Defendants again argued in their summary judgment motion that plaintiff's state claims were preempted by ERISA. The district court noted that it possessed discretion to entertain jurisdiction over plaintiff's pendant state claims even though no federal claim remained. It decided to do so in order again to reject defendants' preemption arguments. Having decided the preemption issue, the district court remanded the action to state court on September 23, 1982.

Upon remand defendants brought a motion for summary judgment on plaintiff's remaining claims (fraud, bad faith denial of claim, and infliction

---

[3]By order dated August 13, 1984, this court granted defendants' request that we take judicial notice that the district court entered judgment on the order.

of emotional distress), arguing that ERISA preempted plaintiff's state law claims and that, even if not preempted, no triable issue of fact existed as to those claims.

The trial court granted summary judgment from which plaintiff appeals.

## DISCUSSION

### I

As best we understand it, plaintiff's principal contention is that his claims for fraud, bad faith denial of benefits, and emotional distress are not preempted by ERISA.

### A

Plaintiff first argues that the doctrine of "law of the case" required the trial court (and requires this court) to abide by the federal district court's ruling that his claims were not preempted by ERISA.

"The doctrine of 'law of the case' deals with the effect of the *first appellate decision* on the subsequent *retrial or appeal*: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case." (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 633, p. 4552, italics in original; see *People* v. *Shuey* (1975) 13 Cal.3d 835 [120 Cal.Rptr. 83, 533 P.2d 211].)

The doctrine of "law of the case" is inapplicable here for two reasons. First, "The doctrine that a previous ruling has become law of the case has no application except as to the decisions of appellate Courts." (*Lawrence* v. *Ballou* (1869) 37 Cal. 518, 521; *People* v. *Apodaca* (1978) 76 Cal.App.3d 479, 488 [142 Cal.Rptr. 830]; 6 Witkin, *op. cit. supra,* § 634, p. 4553.) Therefore, the doctrine does not require adherence to the ruling of the district court—a trial court—in the same case. Second, the doctrine of "law of the case" does not apply where the controlling rules of law have been altered or clarified by a decision intervening between the first and second judicial determinations. (*People* v. *Ramos* (1984) 37 Cal.3d 136, 146 [207 Cal.Rptr. 800, 689 P.2d 430]; *DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 178-180 [18 Cal.Rptr. 369, 367 P.2d 865].) In the instant case, both *Shaw* v. *Delta Air Lines, supra,* 463 U.S. 85 and *Russell* v. *Mass. Mut. Life Ins. Co., supra,* 722 F.2d 482 were decided after the district court's rulings on preemption. To the extent these cases

promulgate rules of law different from those applied by the district court—
a matter we discuss in more detail *post*—these cases are controlling.

### B

Plaintiff next contends section 1144[4] makes clear that his claims are not
preempted by ERISA. We reach the opposite conclusion.

Section 1144(a) provides in pertinent part that, with certain statutory ex-
ceptions, ERISA "shall supercede any and all State laws insofar as they
may now or hereafter relate to any employee benefit plan . . . ." In 1983,
in *Shaw* v. *Delta Air Lines, Inc., supra,* 463 U.S. 85 the United States
Supreme Court endeavored to eliminate much of the conflict among various
state and federal courts as to the scope of the preemptive language of section
1144(a). (*Id.,* at pp. 93-95 [77 L.Ed.2d at pp. 499-500].) Noting that it had
previously described section 1144(a) as a " 'virtually unique pre-emption
provision' " (*id.,* at pp. 96-97, fn. 15 [77 L.Ed.2d at p. 501]) the Supreme
Court interpreted the section expansively: "Section 514(a) of ERISA, 29
USC § 1144(a) [29 USCS § 1144(a)], preempts 'any and all State laws
insofar as they may now or hereafter relate to any employee benefit plan'
covered by ERISA." (*Id.,* at p. 91 [77 L.Ed.2d at p. 497], fn. omitted.)

■ *Shaw* held that "A law 'relates to' an employee benefit plan, in the
normal sense of the phrase, if it has a connection with or reference to such
a plan. Employing this definition, the [New York] Human Rights Law,
which prohibits employers from structuring their employee benefit plans in
a manner that discriminates on the basis of pregnancy, and the [New York]
Disability Benefits Law, which requires employers to pay employees spe-

---

[4]Section 1144 provides in pertinent part: "(a) Except as provided in subsection (b) of this
section, the provisions of this subchapter [subchapter I—protection of employee benefit
rights] and subchapter III [plan termination insurance] of this chapter shall supersede any
and all State laws insofar as they may now or hereafter relate to any employee benefit plan
described in section 1003(a) . . . .

"[(b)](2)(A) Except as provided in subparagraph (B), nothing in this subchapter shall be
construed to exempt or relieve any person from any law of any State which regulates insur-
ance, banking, or securities.

"[(b)][(2)](B) Neither an employee benefit plan described in section 1003(a) of this title,
which is not exempt under section 1003(b) of this title (other than a plan established pri-
marily for the purpose of providing death benefits), nor any trust established under such a
plan, shall be deemed to be an insurance company or other insurer, bank, trust company,
or investment company or to be engaged in the business of insurance or banking for purposes
of any law of any State purporting to regulate insurance companies, insurance contracts,
banks, trust companies, or investment companies.

". . . . . . . . . . . . . . . . . . . .

"(c) For purposes of this section:

"(1) The term 'State law' includes all laws, decisions, rules, regulations, or other State
action having the effect of law, of any State."

cific benefits, clearly 'relate to' benefit plans." (*Id.*, at pp. 96-97 [77 L.Ed.2d at p. 501], fns. omitted.)

In *Russell* v. *Mass. Mut. Life Ins. Co.*, *supra*, 722 F.2d 482 the Ninth Circuit applied the Supreme Court's construction of section 1144(a) to facts similar to those of the instant case. The plaintiff in *Russell* brought suit against her employer for, inter alia, breach of the statutory covenant of good faith and fair dealing (Ins. Code, § 790.03, subd. (h)(5)) and intentional infliction of emotional distress arising out of her employer's handling of her claim for disability benefits under her employer's ERISA employee benefit plan. (727 F.2d at p. 484.) The court held that "Since the state laws here involved authorize state causes of action for the improper handling of claims under benefit plans there is a direct connection between the state laws and the employment benefit plan," and found plaintiff's state claims preempted by ERISA. (*Id.*, at p. 487; and see *Johnson* v. *Transworld Airlines, Inc.* (1983) 149 Cal.App.3d 518, 528-529 [196 Cal.Rptr. 896].)

■ Plaintiff's evidence in opposition to the motion for summary judgment showed his legal claims for bad faith denial of benefits and emotional distress were based upon conduct of representatives of the Fund in processing his claim for benefits. Were California tort law to apply, it would effectively regulate the way the Fund processes its claims. We have no difficulty in holding that California tort law, as applied to these claims, clearly "relates to" the administration of an ERISA plan, so that preemption is mandated by section 1144(a). (*Shaw* v. *Delta Airlines, Inc.*, *supra*, 463 U.S. at p. 97 [77 L.Ed.2d at p. 501]; *Russell* v. *Mass. Mut. Life Ins. Co.*, *supra*, 722 F.2d at p. 488.)

■ For the same reasons, we have no doubt that plaintiff's fraud claims are preempted. These claims are uniformly premised upon a failure to advise him he would have to sign an "Agreement to Reimburse" in order to receive benefits. The claims are based in part on evidence of such misrepresentation of benefits either contained in written descriptions of coverage prepared by the Fund or made by Fund representatives in connection with the processing of plaintiff's claim for benefits. Imposition of California tort law would effectively regulate administrative decisions regarding descriptions of plan coverage and the processing of claims. ERISA preempts that effective regulation.

We reach a similar conclusion with respect to plaintiff's fraud claims against defendants based upon the acts of representatives of plaintiff's union. In his complaint, plaintiff pleaded defendants "directly or through

their agents"[5] made false representations of benefit coverage to him, because they failed to tell him he would not be paid benefits unless he signed an "Agreement to Reimburse." In his declaration in opposition to the motion for summary judgment, plaintiff stated he attended an orientation class where "literature was disseminated and questions were answered by union employees to whom [the Fund] had delegated this responsibility." Plaintiff stated he relied on the description of plan benefits made by the union representatives although he could not recall the specifics of the information because he had not taken notes.[6]

It is clear plaintiff's fraud claims against the union are limited to misrepresentations contained in written descriptions of plan literature prepared by the Fund and distributed by the union. In support of the motion for summary judgment, defendants submitted a declaration of a business agent of the union. He stated that, at an orientation meeting for new members attended by plaintiff, he and other union representatives explained provisions of the collective bargaining agreement but passed out booklets describing health and pension benefits. Plaintiff admits he cannot remember what was said at the meeting. However, plaintiff's memory is the sole source of evidence of what, if anything, was said. Since plaintiff cannot recall what was said, and there is no independent evidence of what was said, he cannot contend that what was said was false. His only viable fraud claim is therefore ultimately grounded on misrepresentations contained in benefit booklets prepared by the Fund. As we have already discussed, ERISA mandates that the contents of these booklets are immune from effective regulation by California tort law. Consequently, in these circumstances we conclude plaintiff's claims against defendants, based upon alleged misrepresentations of benefits by union representatives, are preempted by section 1144(a).[7] (*Shaw* v. *Delta Airlines, supra,* 463 U.S. at p. 91 [77 L.Ed.2d at p. 497]; *Russell* v. *Mass. Mut. Life Ins. Co., supra,* 722 F.2d at p. 488.)

## C

Plaintiff contends that various provisions of subsection (b) of section 1144 exclude his claims from ERISA preemption. We disagree.

---

[5]The Fund is a so-called Taft Hartley Trust, established in accordance with the requirements of section 302(c)(5) of the Labor Management Relations Act of 1947 (§ 186(c)(5)). Under federal law, the Fund and the union are separate legal entities. (See *Lewis* v. *Benedict Coal Corp.* (1960) 361 U.S. 459, 465 [4 L.Ed.2d 442, 447, 80 S.Ct. 489].) Representatives of the union are not automatically agents of the Fund. (*Waggoner* v. *Dallaire* (9th Cir. 1981) 649 F.2d 1362, 1368.) Consequently, in the instant case, plaintiff must show that defendants authorized or ratified the union's conduct in some manner in order to show an agency relationship. (Civ. Code, § 2307.)

[6]Because we conclude his claim is preempted, we do not reach the question whether summary judgment should have been granted on the merits.

[7]We are not here concerned with whether a claim against the union would be preempted. The union has not been named as a party; only the Fund and its administrator are defendants.

■ Section 1144(b)(2)(A) is commonly called the "savings clause." It provides in pertinent part that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance . . . ." The pertinent portion of the clause has been interpreted to make clear that the states remain free to impose and enforce their laws regulating insurance in two situations: (1) where a company, motivated by profit, attempts to set up a sham employee benefit plan to claim ERISA preemption and avoid state regulation of insurance (*Bell* v. *Employee Sec. Ben. Ass'n* (D.Kan. 1977) 437 F.Supp. 382, 392; see also *National Business Conference* v. *Anderson* (S.D.Iowa 1977) 451 F.Supp. 458); and (2) where a legitimate ERISA employee benefit plan contracts with an insurance company to provide insurance, or claims review services, subject to regulation under state law. (See, e.g., *American Prog. Life and Health Ins.* v. *Corcoran* (2d Cir. 1983) 715 F.2d 784; *Wadsworth* v. *Whaland* (1st Cir. 1977) 562 F.2d 70, cert. den., (1978) 435 U.S. 980 [56 L.Ed.2d 72, 98 S.Ct. 1630]; *McLaughlin* v. *Connecticut General Life Ins. Co.* (N.D.Cal. 1983) 565 F.Supp. 434; *Eversole* v. *Metropolitan Life Ins. Co., Inc.* (C.D.Cal. 1980) 500 F.Supp. 1162.)

■ In the instant case, it is undisputed that defendant Valley Clerks Trust Fund is a legitimate ERISA plan. It is further undisputed that said defendant is self-insured and that no insurance company is involved in any aspect of this case. The "savings clause" of section 1144(b)(2)(A) is therefore inapplicable.

■ Section 1144(b)(2)(B) is commonly called the "deemer clause." The purpose of section 1144(b)(2)(B) is succinctly summarized in *Eversole* v. *Metropolitan Life Ins. Co., Inc., supra*: "That clause creates an exception to the savings clause [§ 1144(b)(2)(A)]; it prevents an employee benefit plan from being 'deemed to be an insurance company or other insurer . . . or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts . . .' The deemer clause bars a state from treating a plan as if it were an insurance company because the drafters must have assumed that if the plan were an insurance company, it would still be subject to state law due to the savings clause. The effect of the deemer clause is to prohibit a state from regulating an employee benefit plan even though the plan serves as a self-insurer on its benefits. [Citation.] Thus, the deemer clause distinguishes between true insurance companies, which are subject to state law, and employee benefit plans, which are exempt from state regulation even though they exhibit some of the same risk-distributing characteristics as traditional insurance." (500 F.Supp. at p. 1169, fn. omitted; and see *McLaughlin* v. *Connecticut General Life Ins. Co., supra*, 565 F.Supp. at pp. 442-443.)

■ Consequently, the "deemer clause" (§ 1144(b)(2)(B)) simply makes it clear that the Fund is not subject to regulation under California insurance or banking law. It is of no help to plaintiff.

Since section 1144(b) does not except plaintiff's claims from the general preemptive provisions of section 1144(a), the latter section applies. We hold that plaintiff's claims are preempted by ERISA. (*Shaw* v. *Delta Airlines, Inc., supra,* 463 U.S. at pp. 96-97 [77 L.Ed.2d at p. 501]; *Russell* v. *Mass. Mut. Life Ins. Co., supra,* 722 F.2d at pp. 487-488.)

D

Our conclusion that plaintiff's claims are preempted by ERISA means only that, if plaintiff wishes to pursue these claims in state court, he must find authority to do so in the statutes comprising ERISA. ■ We do not reach the question whether ERISA authorizes tort claims for damages such as those asserted by plaintiff (but see *Russell* v. *Mass. Mut. Life Ins. Co., supra,* 722 F.2d at pp. 488-492), because it is clear ERISA has not conferred jurisdiction on the state courts to adjudicate such claims.

State courts do not exercise jurisdiction over all claims brought under ERISA. Section 1132 provides, in pertinent part: "(a) A civil action may be brought—

"(1) by a participant. or beneficiary—

". . . . . . . . . . . . . . . . . . . . . . .

"[(a)(1)](B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

". . . . . . . . . . . . . . . . . . . . . . .

"(e)(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section."

Plaintiff's preempted claims do not seek to recover benefits due him or to enforce his rights under the terms of the plan or to clarify his rights to future benefits. Rather, plaintiff's preempted claims sound uniformly in tort

for damages. Consequently, the state courts of California have no jurisdiction to adjudicate his preempted claims. (*Johnson* v. *Transworld Airlines, Inc., supra,* 149 Cal.App.3d at p. 530.)

Defendants' motion for summary judgment was properly granted.

### DISPOSITION

The judgment is affirmed.

Regan, Acting P. J., and Sparks, J., concurred.